## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DAVID E. KSIAZKIEWICZ,

                 Plaintiff,

       v.

KILOLO KIJAKAZI, Commissioner of
Social Security,[1]

             Defendant.

CIVIL ACTION NO. 3:21-CV-00109

(MEHALCHICK, M.J.)

## MEMORANDUM

*Pro se* Plaintiff David E. Ksiazkiewicz ("Ksiazkiewicz") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9). For the following reasons, the undersigned shall order that the Commissioner's decision be **AFFIRMED.**

### I.    BACKGROUND AND PROCEDURAL HISTORY

On February 21, 2019, Ksiazkiewicz protectively filed an application under Title II for disability insurance benefits, claiming disability beginning April 1, 2018. (Doc. 14-2, at 17).

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

The Social Security Administration initially denied the application on June 24, 2019, prompting Ksiazkiewicz's request for a hearing, which Administrative Law Judge (ALJ) Jarrod Tranguch held on February 4, 2020. (Doc. 14-2, at 17). In a written decision dated February 28, 2020, the ALJ determined that Ksiazkiewicz is not disabled and therefore not entitled to benefits under Title II. (Doc. 14-2, at 29). The Appeals Council subsequently denied Ksiazkiewicz's request for review. (Doc. 14-2, at 2).

On January 21, 2021, Ksiazkiewicz commenced the instant action. (Doc. 1). The Commissioner responded on June 28, 2021, providing the requisite transcripts from Ksiazkiewicz's disability proceedings. (Doc. 13; Doc. 14). The parties then filed their respective briefs, with Ksiazkiewicz raising three bases for reversal or remand. (Doc. 15; Doc. 16).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[2] Additionally,

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

A.   ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not

- 3 -

substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Ksiazkiewicz is disabled, but whether the Commissioner's determination that Ksiazkiewicz is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Ksiazkiewicz "has not been under a disability, as defined in the Social Security Act, from April 1, 2018, through the date of this decision." (Doc. 14-2, at 25). The ALJ reached this conclusion after proceeding through the

- 4 -

five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Ksiazkiewicz "has not engaged in substantial gainful activity since April 1, 2018, the alleged onset date," and therefore proceeded to step two of the analysis. (Doc. 14-2, at 19).

### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Ksiazkiewicz had two severe medically determinable impairments – obesity and coronary artery disease (status-post myocardial infarctions and stenting). (Doc. 14-2, at 19). Additionally, the ALJ noted the Ksiazkiewicz had the following non-severe impairments: bilateral carpal tunnel

syndrome, ulnar neuropathy of the right arm, paresthesia in the hands, diabetes, sleep apnea, benign prostatic hypertrophy, hypertension, hypercholesteremia, anxiety, depression, back pain, knee pain/arthritis, right hip pain/bursitis, and right shoulder pain. (Doc. 14-2, at 20-21).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Ksiazkiewicz's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 14-2, at 21). The ALJ considered listing 4.04 – ischemic heart disease. (Doc. 14-2, at 21). Additionally, the ALJ considered Ksiazkiewicz's obesity and its possible effects on his ability to work and perform activities of daily living. (Doc. 14-2, at 21).

D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a). This involves a two-step inquiry according to which the ALJ must

(1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Ksiazkiewicz alleged that his physical impairments, including heart disease, arthritis, hip bursitis, and back problems caused difficulties in his ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, use hands, lift more than 20 pounds, and get up without assistance when kneeling or squatting. (Doc. 14-2, at 22). The ALJ found that while Ksiazkiewicz's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 14-2, at 23). The ALJ went on to detail Ksiazkiewicz's medical records and treatment history. (Doc. 14-2, at 23-24). After weighing and considering the evidence, the ALJ determined that Ksiazkiewicz had the, "[RFC] to perform light work as defined in 20 C.F.R. 404.1567(b)," with additional limitations:

> [Ksiazkiewicz] is limited to occasional climbing on ladders, ropes, or scaffolds and crawling. [Ksiazkiewicz] is limited to frequent climbing on ramps and stairs, stooping, kneeling, and crouching. [Ksiazkiewicz] can tolerate no more than occasional exposure to vibration, but must avoid strong fumes, noxious odors, concentrated dusts/gases, and work environments with poor ventilation. [Ksiazkiewicz] must avoid workplace hazards such as unprotected heights and dangerous moving machinery.

(Doc. 14-2, at 21-22).

E.   STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant

period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, based on testimony adduced from a vocational expert at Ksiazkiewicz's administrative hearing, the ALJ determined that Ksiazkiewicz was able to perform his past relevant work as a sales/marketing representative. (Doc. 14-2, at 24). The ALJ noted that "[t]his work does not require the performance of work-related activities precluded by [Ksiazkiewicz's RFC]" and did not proceed to step five of the sequential analysis. (Doc. 14-2, at 24).

## IV.   DISCUSSION

Ksiazkiewicz advances three arguments on appeal.[3] (Doc. 15, at 2). Specifically, Ksiazkiewicz argues that the ALJ erred (1) in considering his limitations in determining his

---

[3] In his brief, Ksiazkiewicz fails to present a statement of the case and a clearly set forth statement of errors as is required by Local Rule 83.40.4 (a) and (b). (Doc. 15, at 1-4). As Ksiazkiewicz proceeds *in forma pauperis*, the Court is required to liberally construe his arguments. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Thus, the Court liberally construes

RFC; (2) in assessing the persuasiveness of Dr. Valenti's opinion; and (3) by failing to ask adequate hypothetical questions to the vocational expert and by relying on the vocational expert's erroneous opinion. (Doc. 15, at 2). Additionally, Ksiazkiewicz argues that his "attorney failed to object to the vocational expert's testimony." (Doc. 15, at 2). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 16, at 25).

A.   THE ALJ DID NOT ERR IN HIS RFC DETERMINATION REGARDING KSIAZKIEWICZ'S IMPAIRMENTS.

Ksiazkiewicz contends that the ALJ failed to "include certain elements or limitations in [his] RFC." (Doc. 15, at 2). The Commissioner argues that the ALJ adequately accounted for Ksiazkiewicz's impairments and considered Ksiazkiewicz's subjective symptoms and daily activities along with his medical records when determining that he can perform a range of light work. (Doc. 16, at 14-18).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel,* 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including

---

the arguments made in Ksiazkiewicz's complaint and brief in support. (Doc. 1; Doc. 15); *Estelle,* 429 U.S. at 106.

medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence to support the ALJ's RFC determination.

In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g.*, *Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

When assessing Ksiazkiewicz's RFC determination, the ALJ found that

[Ksiazkiewicz] is limited to occasional climbing on ladders, ropes, or scaffolds and crawling. [Ksiazkiewicz] is limited to frequent climbing on ramps and stairs, stooping, kneeling, and crouching. [Ksiazkiewicz] can tolerate no more than occasional exposure to vibration, but must avoid strong fumes, noxious odors, concentrated dusts/gases, and work environments with poor ventilation. [Ksiazkiewicz] must avoid workplace hazards such as unprotected heights and dangerous moving machinery.

- 10 -

(Doc. 14-2, at 21-22).

The ALJ noted Ksiazkiewicz's medical problems of obesity and coronary artery disease and considered how these ailments limit his ability to perform light work, but concluded that these problems "are not so severe as to be completely disabling." (Doc. 14-2, at 22).

First, the ALJ considered Ksiazkiewicz's subjective symptoms due to his physical impairments, including heart disease, arthritis (hips, knees, shoulder, and ankle), hip bursitis, and back problems in relation to the medical record. (Doc. 14-2, at 22; Doc. 14-6, at 3). In determining whether the claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (plaintiff's "subjective complaints must be substantiated by medical evidence."). Subjective complaints, then, must be given due consideration, but will be evaluated in the context of objective evidence. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011).

Here, the ALJ found that while Ksiazkiewicz reported difficulty in his ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, and use his hands his "statements about the intensity, persistence, and limiting effects of his . . . symptoms" were inconsistent with the medical evidence. (Doc. 14-2, at 22-23). Specifically, the ALJ reviewed a November 2018, physical examination which stated that Ksiazkiewicz "was in no acute distress and showed full range of motion bilaterally and full strength." (Doc. 14-2, at 23; Doc. 14-7, at 11). The

ALJ also noted a December 2019, evaluation where Ksiazkiewicz was "in no apparent distress" and did not use an assistive device when ambulating. (Doc. 14-2, at 23; Doc. 14-10, at 3). Finally, the ALJ considered a January 2020, report where Ksiazkiewicz "did have some pain and tenderness, but otherwise his physical examination was again within normal limits." (Doc. 14-2, at 23; Doc. 14-10, at 7).

Next, the ALJ evaluated Ksiazkiewicz's daily activities. (Doc. 14-2, at 23). In evaluating the intensity and persistence of pain and other symptoms, the ALJ should consider various factors including: the claimant's daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures the claimant uses to address the pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); *see also Seney v. Comm'r of Soc. Sec.*, 585 F. App'x 805, 809 (3d Cir. 2014) (affirming the ALJ's decision to consider the claimant's "daily functions, including managing her own personal care, cooking, childcare, cleaning, and shopping," when evaluating subjective complaints).

Here, the ALJ considered Ksiazkiewicz's ability to prepare his own meals, drive a car, grocery shop in stores, go out alone, and take care of his dog. (Doc. 14-2, at 23, 41, 53-54; Doc. 14-6, at 41-42). The ALJ stated that he "acknowledges that the claimant has some limitations performing these activities, and while none of these activities [are] dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that the claimant can perform work within the above parameters on a sustained and continuous basis." (Doc. 14-2, at 23).

In his complaint, Ksiazkiewicz contends that the ALJ discounted the findings Dr. Pande's findings and the results of an EMG/NCV test and did not adequately consider

Ksiazkiewicz's use of ambulatory devices or the reality of his back issues.(Doc. 1-1, at 4-5, 8). However, the ALJ sufficiently considered each of Ksiazkiewicz's noted issues in his RFC determination. (Doc. 14-2, at 20, 23). First, the ALJ considered the EMG findings stating that "[Ksiazkiewicz] has been evaluated and treated for bilateral carpal tunnel syndrome and ulnar neuropathy of the right arm. However, these were only discovered recently by EMG." (Doc. 14-2, at 20; Doc. 14-10, at 16). Next, the ALJ considered Ksiazkiewicz's use of a cane and ambulatory devices. (Doc. 14-2, at 24). The ALJ discussed the consultative examination report prepared by Dr. Stone noting that Ksiazkiewicz "requires a cane for weight bearing and balance and walking more than 25 yards," but found her opinion partially persuasive as the medical evidence "not[ing] full strength and normal gait does not support the use of a cane." (Doc. 14-2, at 24; Doc. 14-7, at 23, 27). Additionally, the ALJ noted "in December 2019, [Ksiazkiewicz] was . . . observed ambulating without an assistive device." (Doc. 14-2, at 23). Finally, the ALJ considered Ksiazkiewicz's back issues. (Doc. 14-2, at 20, 22). The ALJ stated that "[Ksiazkiewicz's] reported back pain is not a medically determinable impairment due to a lack of objective evidence." (Doc. 14-2, at 20). The ALJ noted that Ksiazkiewicz's x-ray did not demonstrate degenerative disc disease. (Doc. 14-2, at 20; Doc. 14-7, at 38). Additionally, the ALJ considered the findings from the consultative examiners and Dr. Ferker, a doctor at Northeaster Rehabilitation Associates, P.C., who had "reported tenderness and decreased range of motion, but otherwise . . . normal muscle testing, reflex testing, and sensory testing intact in bilateral lower extremities with negative straight leg raise." (Doc. 14-2, at 20; Doc. 14-7, at 22, 25; Doc. 14-10, at 2-4, 8). The ALJ also considered Ksiazkiewicz's own allegations of back problems and the impairments that the back problems cause. (Doc. 14-2, at 22). However, as discussed *supra*, the ALJ provided substantial evidence

in determining that Ksiazkiewicz's "statements about the intensity, persistence, and limiting effects of his . . . symptoms . . . are inconsistent . . . [with the medical] record." (Doc. 14-2, at 23).

Thus, the ALJ considered Ksiazkiewicz's subjective symptoms, the medical record, and his ability to engage in daily activities when considering his limitations and determining his RFC. (Doc. 14-2, at 22-23). It appears that Ksiazkiewicz is requesting that this Court re-weigh the evidence, which this Court cannot do. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (alteration in original) (quoting Williams, 970 F.2d at 1182) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'"). Accordingly, the ALJ supported his decisions regarding Ksiazkiewicz's RFC with substantial evidence and appropriately reflected his albitites in the RFC determination. (Doc. 14-2, at 22-23).

B.   THE ALJ'S TREATMENT OF DR. VALENTI'S OPINION WAS JUSTIFIED.

Ksiazkiewicz argues that the ALJ afforded "[i]nsuffcent weight" to the opinion of Dr. Valenti. (Doc. 15, at 2). The Commissioner responds that the ALJ's evaluation of Dr. Valenti's opinion is sufficient under the new regulations as it explains the supportability and consistency of his medical opinion. (Doc. 16, at 19, 21-22). Additionally, the Commissioner contends that the ALJ adequately considered the opinions of Dr. Stone, Dr. Rutherford, and Dr. Calise under the same standard. (Doc. 16, at 20-21).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's assessment of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed.

Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion, which are the same factors that formed the foundation of the rule which prioritized the opinion of a treating source. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) (citing *Andrew G. v. Comm'r of Soc. Sec.,* No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.NY. Oct.1, 2020)).

The ALJ must explain how he considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The factor of supportability is considered through the lens that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The factor of consistency is determined through "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Generally, the ALJ may, but is not required to, explain his consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). "[W]hen the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8. To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d 700, at 706-707.

The opinions of Dr. Valenti, Dr. Stone, Dr. Rutherford, and Dr. Carlisle are all acceptable medical sources as they are all licensed physicians. 20 C.F.R. § 404.1502(a)(1); (Doc. 14-3, at 12, 24; Doc. 14-7, at 31; Doc. 14-10, at 10). The ALJ is only required to consider the supportability and consistency of the medical source opinions, which he adequately explained in his decision. (Doc. 14-2, at 23-24).

First, the ALJ found that the opinion of Dr. Valenti, a doctor at Northeastern Rehabilitation Associates, P.C., was not persuasive. (Doc. 14-2, at 24). The ALJ considered Dr. Valenti's opinion noting that

- 16 -

> [Ksiazkiewicz] is capable of light level at max, but only sedentary for sustained activity of 8 hours per day and 40 hours per week . . . that [Ksiazkiewicz] needs to change position frequently and cannot perform repetitive grasp or activity utilizing his hands or wrists [and] recommended that [Ksiazkiewicz] not lift greater than 10 pounds more than an occasional basis and refrain from lifting any greater weight, prolonged standing, walking, repetitive bending, twisting, and should not squat or be exposed to significant humidity or heat.

> (Doc. 14-2, at 23; Doc. 14-10, at 5-15).

The ALJ found Dr. Valenti's opinion inconsistent and unsupported "by the rather limited treatment, pretty benign examination findings, and normal imaging." (Doc. 14-2, at 24). The ALJ also noted that Dr. Valenti only examined Ksiazkiewicz "once at the request of his representative." (Doc. 14-2, at 24). Ksiazkiewicz states that "[t]he ALJ . . . subjectively discounted the findings of Dr. . . . Valenti [by stating that Ksiazkiewicz] only saw this doctor once at the request of his representative." (Doc. 15, at 2). Ksiazkiewicz contends that this is a subjective analysis and that Dr. Valenti's opinion should have been given greater weight. (Doc. 15, at 2). However, the ALJ need only explain how he considered the "supportability" and "consistency" of a medical source's opinion. *See* 20 C.F.R. § 404.1520c(b)(2); *Densberger,* *2021 WL 1172982,* at *8. The ALJ 's stated rationale for finding Dr. Valenti's opinion inconsistent and unsupported is the presence of contradictory medical evidence of record. (Doc. 14-2, at 24). This rationale speaks directly to the factors of "consistency" and "supportability" described in the Social Security Regulations. *See* 20 C.F.R. § 404.1520c(b)(2).

Additionally, the ALJ examined the opinion of Dr. Stone, a consultative examiner, and found it to be partially persuasive. (Doc. 14-2, at 24). The ALJ considered Dr. Stone's opinion that

> [Ksiazkiewicz] could lift and/or carry 21-50 pounds occasionally, 11-20 pounds frequently, and 10 pounds continuously, sit 2 hours at a time and 8 hours in a workday, stand 20 minutes at a time and 4 hours in a workday, walk

15 minutes at a time and 3 hours in a workday, occasionally reach overhead, frequently reach in all other directions, occasionally climb ramps and stairs, but never on ladders, ropes, or scaffolds, kneel, or crawl, occasional tolerate exposure to unprotected heights, moving mechanical parts, and extreme cold, but never humidity, wetness, or extreme heat, and he requires a cane for weight bearing and balance and walking more than 25 yards.

(Doc. 14-2, at 24; Doc. 14-7, at 21-31).

The ALJ found that Dr. Stone's opinion regarding Ksiazkiewicz's exertional limitations was consistent with and supported by "the limited treatment history and grossly normal physical findings" however her opinion that Ksiazkiewicz needed to use a cane was not supported by the medical evidence noting full strength and normal gait. (Doc. 14-2, at 24). Thus, the ALJ adequately assessed the "consistency" and "supportability" of Dr. Stone's opinion as is required by the Social Security Regulations. *See* 20 C.F.R. § 404.1520c(b)(2).

Finally, the ALJ considered the opinions of the state agency medical consultants, Dr. Rutherford and Dr. Calise, and found them to be persuasive. (Doc. 14-2, at 24). The ALJ noted that the state agency consultants' statements that "[Ksiazkiewicz] would be capable of a reduced range of light duty work with occasional climbing on ladders, ropes, or scaffolds, frequent climbing ramps and stairs, stooping, kneeling, crouching, occasional crawling, and avoidance of concentrated exposure to vibration, pulmonary irritants, and hazards." (Doc. 14-2, at 24; Doc. 14-3, at 6-10, 18-22). The ALJ found the state agency medical consultants' opinions "supported by and consistent with the medical evidence of record and activities of daily living . . . [and the] rather limited treatment, the grossly benign physical examination findings, and normal imaging findings." (Doc. 14-2, at 24). This conclusion by the ALJ is supported by the record and substantial evidence as the ALJ explained his reasoning for finding the state agency medical consultants' opinions supported and consistent with the

medical evidence of record. (Doc. 14-2, at 24); *see* 20 C.F.R. § 404.1520c(b)(2).

As such, this case shall not be remanded on the ground that the ALJ's consideration of the medical opinions of Dr. Valenti, Dr. Stone, Dr. Rutherford, and Dr. Calise were not supported by substantial evidence.

C.   THE ALJ ADEQUATELY CONSIDERED THE VOCATIONAL EXPERT'S TESTIMONY.

Ksiazkiewicz's next claim of error challenges the vocational expert's testimony. (Doc. 15, at 2). Specifically, Ksiazkiewicz states that the vocational expert "gave insufficient weight to [his] long time, inability to secure gainful employment in a non-physical position . . . incorrectly evaluated [his] RFC [and] . . . failed to provide or discuss any resource material she used and how she arrived at her opinions." (Doc. 15, at 2). Additionally, Ksiazkiewicz challenges the ALJ's hypothetical question posited to the vocational expert, stating that the ALJ should have inquired into the "employability of the 64-year-old Claimant who has be[en] out of the technical/sales arena for the previous 12 years." (Doc. 15, at 2).

At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work by posing a hypothetical question(s) to the vocational expert. *Chrupcala v. Heckler*, 829 F.2d 1269, 176 (3d Cir. 1987); *see also Rutherford*, 399 F.3d at 554; *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "A hypothetical question posed to the vocational expert must reflect all of the claimant's impairments that are supported by the record; otherwise the question is deficient and the [vocational] expert's answer to it cannot be considered substantial evidence. *Chrupcala*, 829 F.2d at 1276; *see also Rutherford*, 399 F.3d at 554; *Ramirez*, 372 F.3d at 552-55;

*Podedworny*, 745 F.2d at 218. The ALJ, however, is not required to submit to the vocational expert every impairment alleged by a claimant. *Rutherford*, 399 F.3d at 554. "[S]uch references to 'all impairments' encompass only those that are medically established." *Rutherford*, 399 F.3d at 554. Thus, the question posed to the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations. *Rutherford*, 399 F.3d at 554 (quoting *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999)).

First, assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). Thus, the ALJ crafted Ksiazkiewicz's RFC by reviewing all of the evidence of record, not the vocational expert. *See* SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin*, 79 F. Supp. 2d at 548. As discussed *supra*, the Court finds no error in the ALJ's assessment of Ksiazkiewicz's RFC.

Next, the vocational expert noted Ksiazkiewicz's education, work experience, and age noting that he "is considered of retirement age."[4] (Doc. 14-2, at 61-62). Additionally, the ALJ clarified that Ksiazkiewicz is "closely approaching retirement age," which the vocational expert confirmed. (Doc. 14-2, at 62). In his first hypothetical, the ALJ inquired about "an individual who is the same age . . . and [has] the same work experience as [Ksiazkiewicz]." (Doc. 14-2, at 62). Thus, the ALJ considered that Ksiazkiewicz was approaching retirement age and his past work experience when posing the hypothetical question to the vocational expert. (Doc. 14-2, at 62). A hypothetical question must include a claimant's credibly

---

[4] The vocational expert stated that Ksiazkiewicz was 62 years old, however, in his brief, Ksiazkiewicz states that the vocational expert was not asked about "the employability of [a] 64-year-old." (Doc. 14-2, at 61; Doc. 15, at 2). After reviewing Ksiazkiewicz's date of birth, the Court concludes that Ksiazkiewicz was 62 years old on the date of the hearing and 64 years old on the date of the filing of his brief. (Doc. 14-2, at 38; Doc. 15).

established limitations. *See Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 431. Additional "factors to be considered in formulating hypothetical questions include . . . age, education, [and] work experience." *Schaffer v. Astrue*, No. 09-1254, 2010 WL 1444867, at *5 (W.D. Pa. Apr. 9, 2010) (citing *Plummer*, 186 F.3d at 428). As the ALJ considered the age and employment history of Ksiazkiewicz along with the limitations that the ALJ found credible, the ALJ's hypothetical question to the vocational expert was sufficient. (Doc. 14-2, at 62; Doc. 14-2, at 21-22); *see Plummer*, 186 F.3d at 428, 431. Therefore, because the Court finds that the ALJ's hypothetical question posited to the vocational expert adequately set forth all of Ksiazkiewicz's credibly established limitations, his age, and his employment history the Court finds that the ALJ committed no error as to this issue.

Finally, Ksiazkiewicz contends that the vocational expert "failed to provide or discuss any resource material she used and how she arrived at her opinions." (Doc. 15, at 2). The Commissioner argues that Ksiazkiewicz failed to ask for the materials that the vocational expert relied upon and that the vocational expert did not refuse to provide them to Ksiazkiewicz. (Doc. 16, at 22-23). Ksiazkiewicz cites *Biestek v. Berryhill* in support of the vocational expert's need to provide her materials to a claimant. (Doc. 15, at 2-3); 139 S.Ct. 1148, 1155 (2019). In *Biestek*, the Court reasoned that "[a]ssuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." 139 S. Ct. at 1155. The Court further explained that the thorough testimony of a qualified vocational expert who did not produce her survey data "would be the kind of evidence – far 'more than a mere scintilla' – that 'a reasonable mind might accept as adequate to support' a finding about job availability." *Biestek*, 139 S. Ct. at 1155 (quoting *Consolidated Edison Co. of New York v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Although the Court notes that

the "best practice" would be for the vocational expert to produce her supporting data and a less qualified expert might fall short of the substantial evidence standard, a vocational expert need not present her underlying data in order for her testimony to be considered substantial evidence. *Biestek*, 139 S. Ct. at 1155-56. The Court went on to discuss the consequences of a vocational expert's refusal to produce material when it has been requested, however, Ksiazkiewicz does not contend that the vocational expert refused his request for material, and only states that she did not provide or discuss her data. *See Biestek*, 139 S. Ct. at 1156-57; (Doc. 15, at 2).

The qualifications of the vocational expert were stipulated to on the record and the vocational expert did not refuse to provide the material upon which she relied in her testimony because Ksiazkiewicz did not request it. (Doc. 14-2, at 61). As the vocational expert's qualifications were stipulated too, she is not unqualified. (Doc. 14-2, at 61). Further, the vocational expert provided her opinion and answered the questions that the ALJ posed to her. (Doc. 14-2, at 61-63). Ksiazkiewicz's counsel stated that he did not have any additional question hypotheticals and there is no evidence on the record that states that he requested the material upon which the vocational expert based her testimony. (Doc. 14-2, at 63). Thus, even in the absence of supporting data, the vocational expert's testimony provided "more than a mere scintilla" of evidence of job availably for the hypothetical question that was posed to her. (Doc. 14-2, at 62-63); *Biestek*, 139 S. Ct. at 1155.

As such, this case shall not be remanded on grounds regarding the sufficiency of the vocational expert's testimony.[5]

---

[5] Ksiazkiewicz also contends that his counsel "failed to object to the [vocational expert's] assigned job placement number." (Doc. 15, at 2). The Commissioner states that

V.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's decision to deny Ksiazkiewicz's application for benefits be **AFFIRMED**, final judgment be issued in favor of the Commissioner, and the Clerk of Court close this case.

An appropriate Order follows.


**Dated: August 5, 2022**                        s/ *Karoline Mehalchick*
                                                         **KAROLINE MEHALCHICK**
                                                         **Chief United States Magistrate Judge**

---

Ksiazkiewicz's "quarrel is not with the Commissioner but with his former counsel." (Doc. 16, at 23-24). In reviewing an ALJ's determination to deny benefits, the question before the Court is whether the Commissioner's determination that Ksiazkiewicz is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold*, 2014 WL 940205, at *1. Thus, the Court's job is to review the ALJ's determinations and reasoning and not the conduct of a claimant's counsel. As such, Ksiazkiewicz's claim that his counsel failed to object to the vocational expert's testimony is not reviewable by this Court. (Doc. 15, at 2).